Ben West (NV Bar No. 8306)
**CALDARELLI HEJMANOWSKI PAGE & LEER LLP**
3398 Carmel Mountain Rd. Ste. 250
San Diego, CA 92121
(858) 720-8080
dbw@chpllaw.com

Paul Hejmanowski (NV Bar No. 94)
**PRH Law, LLC**
520 So. 4th St, Suite 360
Las Vegas, NV 89101
(702) 834-6166
paul@prhlawllc.com

Attorneys for Plaintiff Brynes Capital Life Settlement Wealth Fund 2021, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BRYNES CAPITAL LIFE SETTLEMENT WEALTH FUND 2021, LLC., a Delaware limited liability company,<br><br>            Plaintiff,<br><br>    v.<br><br>CAPSTONE CAPITAL MANAGEMENT, LLC, a South Dakota limited liability company; CAPSTONE CAPITAL SOUTH DAKOTA, LLC, a South Dakota limited liability company; MICHAEL BRADBURN, a natural person, ROBERT FAY, a natural person; JERRY LEWIS, a natural person; TYLER RANDOLPH, a natural person and CHRISTIAN STREIB, a natural person; and DOES 1-10.<br><br>            Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Brynes Capital Life Settlement Wealth Fund 2021, LLC ("Plaintiff" or "Brynes") for its Complaint against Defendants alleges as follows:

## SUMMARY

1. This is an action for recovery of at least $3,200,000 in reserve funds that Plaintiff Brynes was led to believe were being held in an escrow account. Much to Plaintiff Brynes's dismay, this money was, in fact, not held in an escrow account, but had been moved from the escrow account to a trust account which was then pledged as collateral for a loan that Defendant Capstone Capital Management, LLC obtained.

2. Defendant Capstone's lender called the loan due and assets of the trust account, including all of Plaintiff Brynes's funds, were used by the lender to repay its loan.

3. In addition to losing this $3,200,000 in reserve funds, Plaintiff has incurred other damages of at least $5,000,000 arising out of Defendants' actions.

4. Plaintiff Brynes seeks compensatory damages and punitive damages for Defendants' actions.

## PARTIES

5. Plaintiff Brynes Capital Life Settlement Wealth Fund 2021, LLC is a Delaware limited liability company having a principal address of 43274 Greenway Blvd., Punta Gorda, FL 33982.

6. Defendant Capstone Capital Management, LLC ("Capstone") is a South Dakota limited liability company with a principal address of 300 S. Phillips Ave., Suite 300, Sioux Falls, SD 57104. Defendant Capstone was the grantor of the Capstone Capital Trust, a trust created under the laws of Nevada.

7. Defendant Capstone Capital South Dakota, LLC ("Capstone South Dakota") is a South Dakota limited liability company with a principal address of 300 S. Phillips Ave., Suite 300, Sioux Falls, SD 57104. Defendant Capstone Capital South Dakota is the trust protector to the Capstone Capital Trust.

8. Defendant Michael Bradburn is a natural person who, on information and belief, resides in Fishers, Indiana.  Defendant Bradburn holds himself out as a managing member of Defendant Capstone Capital and manager of Defendant Capstone South Dakota.

9. Defendant Robert Fay is a natural person who, on information and belief, resides in San Antonio, Texas.  Defendant Fay is the investment advisor to the Capstone Capital Trust.

10. Defendant Jerry Lewis is a natural person who, on information and belief resides in Atlanta, Georgia.  Defendant Lewis is the distribution advisor to the Capstone Capital Trust.

11. Defendant Tyler Randolph is a natural person who, on information and belief, resides in Humacao, Puerto Rico.  Defendant Randolph holds himself out as a managing member of Defendant Capstone and manager of Defendant Capstone South Dakota.

12. Defendant Christian Streib is a natural person who, on information and belief, resides in Granbury, Texas.  Defendant Streib holds himself out as a managing member of Defendant Capstone and manager of Defendant Capstone South Dakota.

13. Plaintiff is unaware of the true names and capacities of the Defendants sued in this action as Does 1 through 10 and therefore sue these Defendants by such fictitious names.  Plaintiff alleges upon information and belief that at all times mentioned in this Complaint, each of the Doe Defendants was responsible in some manner for the acts, omissions, and occurrences alleged in this Complaint and Plaintiff's damages were proximately caused by these acts, omissions and occurrences. Plaintiff will amend this Complaint to allege the true names and capacities of the Doe Defendants after Plaintiff ascertains their true names.  Wherever this Complaint alleges that any breach, act or omission was done or committed by a specifically named Defendant, Plaintiff intends to allege and does allege at this point that each and every Doe Defendant committed the same breach, act or omission.

14. Plaintiff alleges on information and belief that at all times mentioned in this Complaint, each Defendant was the principal, agent, employee, representative, joint venturer or partner of each or all of the other Defendants and was acting, either directly or indirectly, or was being acted for within the scope and authority of such agency, employment, representation, joint venture or partnership while doing or omitting to do the acts alleged in this Complaint with the permission approval, consent and ratification of all other Defendants.

## JURISDICTION & VENUE

15. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states such that complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16. The Court has personal jurisdiction over Defendants because they purposefully directed their activities toward the State of Nevada, and thus, purposefully availed themselves of the privileges of conducting business in the State of Nevada. This action arises out of their contacts with the State of Nevada.

17. Defendant Capstone South Dakota, Defendant Fay, and Defendant Lewis have submitted to the jurisdiction of the courts of the State of Nevada because each has "accept[ed] an appointment to serve as a trust protector or a trust adviser of a trust subject to the laws of this State . . . ." NRS § 163.5555.

18. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

19. Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(3) because each Defendant is subject to the court's personal jurisdiction with respect to this action.

# FACTS COMMON TO ALL CLAIMS

**A. Plaintiff Brynes's Life Settlement Business.**

20. Plaintiff Brynes is engaged in the business of life settlement or "LS."

21. An LS is a transaction in which an individual sells his or her life insurance policy to a third-party investor, usually through a broker, for an amount less than the policy's face value but greater than the net cash surrender value. The buyer becomes responsible for paying the future premiums and, upon the death of the seller, receives the policy's death benefits.

22. Relevant to this action, Plaintiff Brynes was formed in 2021 for the purpose of acquiring, maintaining, and holding a portfolio of acquired LS policies. Plaintiff Brynes's manager is Brynes Capital, LLC ("Brynes Capital").

23. Pursuant to a Private Placement Memorandum and Subscription Agreements, Brynes Capital offered investors the opportunity to purchase units in Plaintiff Brynes.

24. By purchasing these units, investors would receive a pro-rata distribution of a future payouts of such LS benefits based on the units owned by the investor.

25. While Plaintiff Brynes was open to new investors (the "Subscription Phase"), Brynes Capital allocated funds raised from investors to two critical purposes: a) funds to acquire LS policies ("Purchase Funds") and b) funds to pay premiums on acquired LS policies for a period covering the life expectancy of the insured plus an additional 24 months ("Premium Payment Funds").

26. This second purpose was most important because if, at any time, the amount of Premium Payment Funds became insufficient to pay the premiums on acquired LS policies, then Plaintiff Brynes would face the risk of policies lapsing, not receiving the death benefits, and losing the money paid to purchase the policies. Accordingly, it was vital that sufficient cash funds were held in a reserve account to pay the premiums on all policies it obtained through the life expectancy of the insured plus an additional 24 months.

### B. Defendant Capstone Established the Capstone Capital Trust Pursuant to Nevada Law.

27. On January 9, 2014, Defendant Capstone, as grantor, established the Capstone Capital Trust under Nevada law. The trust documents named Defendant Capstone South Dakota, as the trust protector, Alliance Trust Company, LLC as the administrative trustee, Defendant Fay as the investment advisor, and Defendant Lewis as the distribution advisor.

28. The statement of intent of the Capstone Capital Trust (section 1.06) was that "assets transferred to the trust be held for the benefit of the trust beneficiaries on the terms and conditions set forth in this agreement."

29. In or about 2022, Alliance Trust Company, LLC resigned as administrative trustee and was replaced by Trustar Corporation d/b/a Nevada Trust Company.

### C. Defendant Capstone's "Proprietary" Premium Reserve Management System.

30. Relevant to this action, Defendant Capstone offers various services to LS fund sponsors, including a so-called proprietary premium reserve management system that Defendant Capstone claims is "designed to optimize a life settlement policy to achieve an absolute return with a known yield-to-maturity . . . but uncertain holding period."

31. The centerpiece of this premium reserve management system is the Capstone Capital Trust which Defendant Capstone described as facilitating so-called "risk transfer." In marketing materials, Defendant Capstone wrote: "[c]lients engage the Trust's services of the sole purpose of managing and paying policy premiums from escrowed/capitalized reserves. The [premium reserve management] system is in place to ensure policies are premium paying, in-force, and in good standing at the time of maturity."

### D. The Purchase Funds and Premium Payment Funds Were to be Held in Escrow While the Fund was Open to New Investors.

32. Relying on Defendant Capstone's representations about the premium reserve management system designed to transfer risk while ensuring that premiums were paid – made through Defendants Bradburn, Randolph, and Streib – Brynes Capital agreed to Defendants' preferred procedures on how investor funds were to be handled both during the Subscription Phase and after the close of the Subscription Phase.

33. Defendant Capstone – through Defendants Bradburn, Randolph, and Streib – directed Plaintiff to have all investor funds received during the Subscription Phase deposited into an escrow bank account owned by a third-party escrow agent, TVPX ARS, Inc ("TVPX").

34. Defendant Capstone then arranged for Libra Fund, LLC ("Libra") – an independent, third-party company managed by an Austin, Texas personal injury attorney named Jeremy Levine – to be the so-called "paying agent" for the TVPX escrow account.

35. According to contracts conceived, drafted, and disseminated by Defendant Capstone – through Defendants Bradburn, Randolph, and Streib – TVPX could disburse funds from the escrow account only pursuant to instructions that TVPX received from Libra. Defendant Capstone, through Defendant Randolph, directed Libra.

36. During the Subscription Phase, all funds raised from investors were to remain in this escrow account and could be disbursed only upon instructions by Libra to either purchase new LS policies or pay premiums on acquired LS policies.

37. Plaintiff Brynes did not give permission for these funds to be moved from the TVPX escrow account **before** the close of the Subscription Phase.

38. Only after Plaintiff Brynes had acquired its targeted portfolio of LS policies and ended the Subscription Phase, were funds to be moved from the TVPX escrow account to the Capstone Capital Trust.

39. Once in the Capstone Capital Trust account, the funds were to be professional managed under the supervision of Defendant Fay as the investment advisor to the Capstone Capital Trust.

40. Additionally, premiums were to be distributed from the Capstone Capital Trust and paid to the respective carriers as they came due pursuant to Defendant Capstone's so-called propriety premium reserve management system.

**E. During the Subscription Phase, Defendant Capstone Provided Plaintiff With Monthly Escrow Analysis Reports.**

41. During the Subscription Phase, Defendant Capstone provided Plaintiff with monthly Escrow Analysis Reports that were prepared and personally presented by Defendant Bradburn to Brynes Capital during monthly meetings.

42. These Escrow Analysis Reports, as the name suggests, detailed how much money was purportedly held in escrow, the policies that had been acquired, the amount of money allocated to Purchase Funds, and the amount of money allocated to Premium Payment Funds.

43. Plaintiff relied on these reports in order to determine the amount of additional money to raise for the acquisition of additional LS policies, to determine the amount of money needed to pay premiums on acquired LS policies, and to report these details back to its investors.

44. During the Subscription Phase, Plaintiff had acquired three LS policies and planned to acquire four additional LS policies. One acquired policy had a $5,000,000 death benefit.

45. Based on the monthly Escrow Analysis Reports provided by Defendant Capstone, Plaintiff was led to believe that, in fact, all money raised from investors was in the TVPX escrow account. These funds were not to be moved from the escrow

accounts to the Capstone Capital Trust account until the Subscription Phase closed.

**F. Defendant Learned that the Funds had been moved from Escrow to the Capstone Capital Trust and then Pledged as Collateral for a Loan.**

46. In or about late February/early March 2024, Brynes Capital received a telephone call from a Federal Bureau of Investigation agent. The agent informed Brynes Capital that the FBI was investigating Defendant Capstone and that the investigation had indicated that Defendant Capstone, through its executives, had misdirected funds earmarked for particular investments in order to facilitate a long-standing fraud scheme. The FBI has posted information to this effect on its website.[1]

47. Brynes Capital later learned that the funds that were supposed to be in the escrow account under the supervision of an independent escrow agent (based upon the monthly escrow reports presented to Plaintiff Brynes by Defendant Capstone) had, in fact, been transferred without Plaintiff Brynes's knowledge or consent from the escrow account to the Capstone Capital Trust account.

48. Brynes Capital then learned that the Capstone Capital Trust account had been pledged as collateral by Defendant Capstone for a loan that Defendant Capstone had received from The Bancorp.

49. Brynes Capital did not authorize the transfer of funds from the escrow account to the trust account and certainly did not authorize these funds to be pledged as collateral for a loan obtained by Defendant Capstone.

50. Had Brynes Capital known that these funds had been moved from the escrow account to the trust account before the close of the Subscription Phase, Brynes Capital would have insisted that all funds be returned to the escrow account.

51. Had Brynes Capital known that these funds, after being moved to the trust account, were to be pledged as collateral for a loan that Defendant Capstone obtained, Plaintiff Brynes would have demanded that the funds be returned to the escrow

---

[1] https://www.fbi.gov/how-we-can-help-you/victim-services/seeking-victim-information/seeking-victim-information-in-the-investigation-of-capstone-capital-management.

account.

52. Plaintiff Brynes also has learned that The Bancorp called the loan and used all of the funds to repay the entire principal balance of the loan.

53. Plaintiff Brynes also has learned that the $5,000,000 LS policy it had acquired has lapsed because the premium payments had not been timely made. Plaintiff Brynes has lost the ability to recover the death benefit.

## FIRST CAUSE OF ACTION

## (Fraud – Against Defendants Capstone, Defendant Bradburn, Defendant Randolph, and Defendant Streib, and DOES 1-10)

54. Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

55. Defendant Capstone through Defendants Bradburn, Randolph, and Streib made false representations to Plaintiff Brynes, namely that Plaintiff Brynes's funds would be kept in the escrow account until the close of the Subscription Phase and then, and only then, would the funds be moved to the Capstone Capital Trust account where the funds were to remain until all LS policies in Plaintiff's portfolio matured.

56. Defendant Capstone and Defendants Bradburn, Randolph, and Streib further falsely represented that the funds raised by Plaintiff Brynes would be used solely for their intended purposes: acquisition of new LS policies and payment of premiums on acquired LS policies.

57. Defendant Capstone and Defendants Bradburn, Randolph, and Streib further falsely and serially represented that the funds were still held in the escrow account – and did not disclose the transfer of the funds to the trust account – when they prepared and delivered the monthly Escrow Analysis Reports to Brynes Capital.

58. Defendant Capstone and Defendants Bradburn, Randolph, and Streib knew these representations were false.

59. Despite knowing these representations were false, Defendant Capstone and Defendants Bradburn, Randolph, and Streib intended to induce Plaintiff Brynes to

act (*i.e.* to use Defendant Capstone's consulting and/or premium reserve management services that included the use of the TVPX escrow account with Libra Fund as the paying agent) or refrain from acting (*i.e.* to cease using Defendant Capstone's consulting and/or premium reserve management services).

60. Plaintiff Brynes justifiability acted in reliance upon Defendant Capstone's and Defendants Bradburn's, Randolph's, and Streib's misrepresentations.

61. Plaintiff Brynes was damaged in an amount to be proven at trial but which is approximately $3,200,000 in lost reserve funds.

62. Plaintiff Brynes was further damaged when the LS policy with a $5,000,000 death benefit lapsed.

63. Defendant Capstone and Defendant Bradburn acted with malice, oppression, and fraud warranting an award of punitive damages under NRS § 42.005.

## SECOND CAUSE OF ACTION

**(Breach of Contract – Against Defendant Capstone)**

64. Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

65. Brynes Capital and Defendant Capstone entered into a written contract on or about January 20, 2021, referred to as the "Premium Reserve Management Agreement."

66. Plaintiff Brynes was an intended third-party beneficiary of the Premium Reserve Management Agreement.

67. Under the terms of the Premium Reserve Management Agreement, the parties thereto agreed that funds held in the escrow account would be transferred to the Capstone Capital Trust account at TD Ameritrade only after the close of the Subscription Phase.

68. The parties thereto further agreed that once funds had been transferred to the Capstone Capital Trust account that Defendant Capstone had the sole responsibility to pay premiums on LS policies acquired by Plaintiff Brynes.

69. Defendant Capstone breached the Premium Reserve Management Agreement in at least four ways.

70. First, Defendant Capstone breached when it directed Libra/TVPX to disburse funds from the escrow account to the trust account before the Subscription Phase closed and without Brynes Capital's knowledge or authorization.

71. Second, Defendant Capstone breached when it failed to pay premiums on the LS policy with the $5,000,000 death benefit, causing it to lapse.

72. Third, Defendant Capstone breached when it pledged the funds in the trust account as collateral for a loan it obtained from The Bancorp for its own benefit.

73. Fouth, Defendant Capstone breached when it allowed the pledged funds to be used by The Bancorp to pay the loan Defendant Capstone obtained.

74. As a result of Capstone's multiple breaches, Plaintiff Brynes was damaged in an amount to be proven at trial but which is at least $8,200,000.

## THIRD CAUSE OF ACTION

**(Breach of Fiduciary Duty – Against Defendants Capstone South Dakota, Fay, and Lewis)**

75. Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

76. Plaintiff was a beneficiary of the Capstone Capital Trust by virtue of the Purchase Funds and Premium Payment Funds having been moved from the TVPX escrow account to the Capstone Capital Trust, albeit without Plaintiff's permission or consent.

77. As the trust protector of the Capstone Capital Trust, Defendant Capstone South Dakota was a fiduciary as that term is defined in NRS § 163.554 and owed fiduciary duties to Plaintiff Brynes.

78. As the investment advisor of the Capstone Capital Trust, Defendant Fay was a fiduciary as that term is defined in NRS § 163.554 and owed fiduciary duties to Plaintiff Brynes.

79. As the distribution advisor of the Capstone Capital Trust, Defendant Lewis was a fiduciary as that term is defined in NRS § 163.554 and owed fiduciary duties to Plaintiff Brynes.

80. As fiduciaries, Defendant Capstone South Dakota, Defendant Fay, and Defendant Lewis owed a duty of care to exercise their respective powers in the beneficiaries' best interests.

81. Defendant Capstone South Dakota, Defendant Fay, and Defendant Lewis breached their fiduciary duties when they allowed the funds held in trust for Plaintiff Brynes's benefit to be pledged as collateral for a loan obtained by Defendant Capstone.

82. Defendant Capstone South Dakota, Defendant Fay, and Defendant Lewis further breached their fiduciary duties when they failed to notify Plaintiff Brynes that its funds had been pledged as collateral for a loan obtained by Defendant Capstone.

83. Plaintiff Brynes was damaged in an amount to be proven at trial but which is approximately $3,200,000.

84. Plaintiff Brynes suffered additional damages when the LS policy with the $5,000,000 death benefit lapsed.

85. Defendant Capstone South Dakota, Defendant Fay, and Defendant Lewis acted with malice, oppression, and fraud warranting an award of punitive damages under NRS § 42.005.

## FOURTH CAUSE OF ACTION

**(Negligence – Against Defendants Fay and Lewis and DOES 1-10)**

86. Plaintiff re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

87. Plaintiff was a beneficiary of the Capstone Capital Trust by virtue of the Purchase Funds and Premium Payment Funds having been moved from the TVPX escrow account to the Capstone Capital Trust, albeit without Plaintiff's permission or consent.

88. As the investment advisor and distribution advisor to the Capstone Capital Trust, Defendant Fay and Defendant Lewis, respectively, owed Plaintiff a duty of care to ensure that trust assets were invested prudently, for the benefit of the beneficiaries, and for the purposes of the Capstone Capital Trust.

89. Defendants breached their duty of care when they permitted the assets of the Capstone Capital Trust, including Plaintiff's funds, to be pledged as collateral for a loan to Defendant Capstone that was clearly not for the benefit of the trust or for the benefit of Plaintiff Brynes as a beneficiary of the trust.

90. Plaintiff was harmed by these Defendants' negligence and such harm was proximately caused by these Defendants' negligence.

91. Plaintiff Brynes was damaged in an amount to be proven at trial but which is approximately $3,200,000.

92. Plaintiff Brynes suffered additional damages when the LS policy with the $5,000,000 death benefit lapsed.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Brynes prays that this Court enter judgment in its favor and against Defendants as follows:

1. For compensatory damages according to proof but in an amount of approximately $3,200,000 arising from the lost reserve funds;
2. For compensatory damages according to proof but in an amount of approximately $5,000,000 arising from the lapsed LS policy;
3. For punitive damages;
4. For pre- and post-judgment interest;
5. For prevailing party costs;
6. For such other and further preliminary and final relief that the Court deems just and equitable.

| | |
|---|---|
| | Respectfully submitted, |
| Dated: June 13, 2024 | **CALDARELLI HEJMANOWSKI PAGE & LEER LLP** |
| | By: /s/ Ben West |
| |     Ben West |
| | Attorneys for Plaintiff Brynes Capital Life Settlement Wealth Fund 2021, LLC. |
| | **PRH Law, LLC** |
| | Paul Hejmanowski |